# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

EVA HELDA SAVALES, an
individual

      Plaintiff,

v.                                      Case No. 3:19-cv-523-J-32PDB

JANENE WATERS, an individual,
RIVERBEND PARTNERS, LLC, a
Delaware limited liability company,
JOSEPH STREAN, an individual,
WILLIAM S. CATER, an individual,
WRH REALTY SERVICES, INC., a
Florida corporation, STARE
DECISIS USA, LLC, a Delaware
limited liability company, and CITY
OF JACKSONVILLE,

      Defendants.

_____

## O R D E R

A woman calls 911 to report that another woman hit her with a six-foot-long two-by-four piece of wood. After taking a statement from the alleged victim and a witness, law enforcement attempts to talk to the 87-year-old alleged perpetrator. But she refuses to get out of her car and tells the officer to go away. Without further warning, the officer physically removes her from the car,

slamming her to the ground in the process, leading to this lawsuit claiming, among other things, false arrest and excessive force.

This case is before the Court on Defendants William Cater and the City of Jacksonville's Motion to Dismiss (Doc. 23), Defendant Janene Waters's Motion to Dismiss (Doc. 24), which Defendant WRH Realty Services, Inc. joined (Doc. 25). Plaintiff Eva Helda Savales responded in opposition to each motion to dismiss. (Docs. 34, 45). Additionally, Defendant Riverbend Partners, LLC filed a Motion for Summary Judgment, (Doc. 51), which has no response.

## I. BACKGROUND

### A. Facts Alleged in the Complaint

On October 19, 2015, Savales was loading her car with items from her apartment, which she rented from Casa Del Rio St. Johns (the name that Defendant Riverbend Partners, LLC was doing business as). (Doc. 16 ¶ 21). Casa Del Rio was managed by WRH, and WRH employed Waters to conduct Casa Del Rio's day-to-day operations. Id. ¶¶ 6–11. Waters demanded that Savales, who was parked on the grass, move her car, but Savales declined to do so. Id. ¶¶ 21–23.

Waters became upset and she called 911 and allegedly falsely reported that Savales "assaulted her while holding a board and threatened to choke [Waters and Joseph Strean] with a chain." Id. ¶ 26. Strean worked for Arlington Wrecker Service (the name that Defendant Stare Decisis USA, LLC was doing

2

business as), and Casa Del Rio or WRH hired Arlington Wrecker to remove unauthorized vehicles from the apartment complex. Id. ¶¶ 12–16. On the date in question, Arlington Wrecker dispatched Strean to tow Savales's car. Id. ¶ 13. After the 911 call, Waters and Strean allegedly agreed to falsely report that Savales had assaulted or battered Waters so that Savales would be arrested and Strean could tow her car. Id. ¶ 29. Cater, an officer with the Jacksonville Sheriff's Office ("JSO"), responded to Waters's 911 call. Id. ¶¶ 18, 27.

Upon arrival at Casa Del Rio, Waters informed Cater that she managed Casa Del Rio and stated that she had an ongoing dispute with Savales. Id. ¶¶ 30–31. During that conversation, Waters "falsely reported" that the eighty-seven-year-old Savales hit her on the right thigh with a six-foot-long two-by-four. Id. ¶ 32. Cater did not see any injuries. Id. ¶ 33. Cater next spoke with Strean, who recounted the same events as Waters. Id. ¶ 35. Cater located a two-by-four leaning against a dumpster within the apartment complex but he did not locate a chain. Id. ¶ 3.

Cater approached Savales, who was approximately one-hundred feet away in her car with the engine running. Id. ¶ 37. Through the open driver's side window, Cater asked Savales to step out of the vehicle, but Savales, who was not engaging in any threatening activity, refused to speak to Cater and asked him to leave. Id. ¶¶ 38–40. "Without warning or further instruction . . . [Cater] opened the driver's side door and forcibly removed [Savales] from the

driver's seat . . . and slammed her face down on the pavement of the parking lot before placing his right foot in her back until he had secured her hands behind her back in handcuffs." Id. ¶ 41. Among other injuries, Savales's foot was smashed by her car door and she tore her shoulder.

Savales was booked at the Duval county jail on charges of aggravated battery with a deadly weapon (a second degree felony) and resisting an officer without violence (a first degree misdemeanor). Id. ¶ 45; see §§ 784.045 & 843.02, Fla. Stat. (2019). Savales remained in the jail until October 23, 2015 when she posted a surety bond of $55,006. (Doc. 16 ¶ 45). On November 19, 2015, Savales was charged by information with one count of battery (a first-degree misdemeanor) and one count of resisting an officer without violence. Id. ¶ 48. The State Attorney's Office declined to prosecute these charges after Savales "was adjudicated mentally incompetent . . . ." Id. ¶ 49.

**B. Procedural History**

On May 3, 2019, Cater and the City removed the case to this Court. (Doc. 1). On May 16, 2019, Cater and the City and Riverbend Partners filed motions to dismiss the Amended Complaint (which had been originally filed in state court). (Docs. 4, 5). On June 10, 2019, the Court entered an order advising Savales that her responses to the motions to dismiss were overdue and extending the deadlines to June 24, 2019. (Doc. 10). On the new deadline, instead of responding to the motions to dismiss, Savales filed a Second Amended

Complaint. (Doc. 16). The following day, Savales requested leave to file a second amended complaint, (Doc. 19), which was granted, (Doc. 21).

The Second Amended Complaint, the operative complaint, alleges sixteen causes of action: Florida malicious prosecution against Waters (Count I); Florida malicious prosecution against WRH based on Waters's conduct as its employee (Count II); Florida malicious prosecution against Casa Del Rio based on Waters's conduct as an apparent agent (Count III); Florida malicious prosecution against Strean (Count IV); Florida malicious prosecution against Arlington Wrecker based on Strean's conduct as its employee (Count V); Florida civil conspiracy against Waters and Strean (Count VI); Florida civil conspiracy against WRH for Waters conduct as its employee (Count VII); Florida civil conspiracy against Casa Del Rio based on Waters's conduct as an apparent agent (Count VIII); Florida civil conspiracy against Arlington Wrecker based on Strean's conduct as its employee (Count IX); Florida unlawful arrest against Cater (Count X); Florida unlawful arrest against the City, which is pled in the alternative to Count X (Count XI); Florida battery and excessive force against Cater (Count XII); Florida battery and excessive force against the City, which is pled in the alternative to Count XII (Count XIII); Florida malicious prosecution against Cater (Count XIV); 42 U.S.C. § 1983 unlawful detention and arrest claim based on false arrest against Cater (Count XV); and 42 U.S.C.

§ 1983 unlawful detention and arrest claim based on excessive force against Cater (Count XVI).

Casa Del Rio answered, (Doc. 22), and subsequently filed an amended answer, (Doc. 58). Cater and the City filed a Motion to Dismiss, (Doc. 23), seeking dismissal of all claims against them. Waters also filed a Motion to Dismiss, (Doc. 24), which WRH joined, (Doc. 25).

Savales's counsel again failed to timely respond to the motions. Thus, the Court entered an order extending the deadline to August 21, 2019 and required Savales's counsel to certify in writing "that he has read Local Rule 3.01(b) and understands his obligations therein. In the future, and without further notice to plaintiff's counsel, the Court will rule on any motion to which plaintiff's counsel fails to timely respond in this or any other case, assuming it is unopposed." (Doc. 29). Savales's counsel filed the certification on the due date, (Doc. 30), and filed a motion for extension of time to extend the response deadline by one day. (Doc. 31). The motion was granted, extending the deadline to respond to the motions to dismiss to August 22, 2019. (Doc. 32). On August 23, 2019, Savales's counsel filed another motion for extension of time to file a response. (Doc. 33). However, this motion failed to comply with Middle District of Florida Local Rule 3.01(g), requiring a certification that counsel have conferred regarding the motion and whether it is opposed. Id.; Doc. 35.

On August 26, 2019, without a ruling on the second motion for extension of time, Savales filed a response in opposition to Waters and WRH's motion to dismiss. (Doc. 34). Two days later, the Magistrate Judge entered an order requiring Savales to supplement her motion for an extension to time with an appropriate Rule 3.01(g) certification by September 4, 2019. (Doc. 35). Savales failed to comply with this Order, and on September 19, 2019, the Magistrate Judge ordered Savales to show cause why the Court should not impose sanctions for Savales's failure to comply with the Court's prior Order. (Doc. 38). Savales's counsel was warned that "failure to attend the hearing could result in sanctions without further notice." (Doc. 38).

On September 26, 2019, Savales's counsel filed the supplement with the appropriate 3.01(g) certification. (Doc. 40). On that same day he filed: two discovery matters that were stricken for violating Local Rule 3.03(d), (Doc. 52); a motion to file a response to Cater and the City's motion to dismiss out of time, (Doc. 44); and a motion for leave to file a response in excess of the page limitations, (Doc. 43).

On October 11, 2019, the Magistrate Judge conducted the show cause hearing and granted Savales's motion for extension of time to file a response to Waters and WRH's motion to dismiss and Savales's motion to file a response to Cater and the City's motion to dismiss out of time. (Docs. 46, 60). Additionally, the Magistrate Judge granted in part Savales's motion for leave to file a

response in excess of the page limitation. (Doc. 60). Based on Savales's counsel's responses at the show cause hearing, the Magistrate Judge declined to impose sanctions and discharged the Order to Show Cause. (Doc. 47).

On October 23, 2019, Casa Del Rio (Riverbend) filed a motion for summary judgment asserting that there was no apparent agency among it and Waters, and thus judgment should be entered in its favor. (Doc. 51). Per the Case Management and Scheduling Order, Savales had twenty-one days to respond to the motion for summary judgment. (Doc. 18 at 2). Like many others in this case, that deadline passed without a response from Savales. On December 5, 2019 (twenty-one days after the deadline), the Clerk entered a Summary Judgment Notice that, among other things, informs the parties:

> [Y]ou you are hereby further advised: (1) failing to respond to these motion(s) will indicate that the motion(s) are not opposed; (2) all material facts asserted by the movant in the motion(s) will be considered to be admitted by you unless controverted by proper evidentiary materials (counter-affidavits, depositions, exhibits, etc.) filed by you; and (3) you may not rely solely on the allegations of the issue pleadings (e.g., complaint, answer, etc.) in opposing these motion(s).

(Doc. 59 at 2). Savales never filed a response.

Further, although the Clerk issued a summons for Stare Decisis USA, LLC (Arlington Wrecker) on September 25, 2019, they have not appeared and there is no indication they have been served.

## II. CATER AND THE CITY'S MOTION TO DISMISS

Cater and the City move to dismiss each claim asserted against them. (Doc. 23). For the federal § 1983 claims against Cater, he asserts he is protected by qualified immunity because he did not violate a clearly established constitutional right. For the Florida counts, Cater and the City contend that Savales has failed to state a claim for various reasons.

### A. False Arrest and § 1983 False Arrest

Savales alleges in the Second Amended Complaint that Cater unlawfully arrested her and asserts Florida false arrest claims against Cater and the City and a federal § 1983 false arrest claim against Cater. Cater and the City seek dismissal of these claims, arguing that Cater had probable cause to arrest Savales and therefore cannot be held liable. (Doc. 23). To the contrary, Savales contends that Cater did not have probable cause because the information he received was untrustworthy and he did not conduct an adequate investigation. (Doc. 45 at 4–8, 19–20).

Under both Florida and federal law, probable cause is an absolute bar to a claim of false arrest.[1] Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998).

---

[1] To receive qualified immunity from a § 1983 false arrest claim, a defendant need only show arguable probable cause instead of probable cause. However, because Cater had actual probable cause, it is unnecessary to determine whether he had arguable probable cause. Additionally, because the existence of probable cause negates any constitutional violation, the Court need not conduct the second step of the qualified immunity analysis—whether the

Determining whether an officer had probable cause is the same under both Florida and federal law. Id.

Probable cause is determined by "whether, at the time of the arrest, 'the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" Huebner v. Bradshaw, 935 F.3d 1183, 1187 (11th Cir. 2019) (alteration adopted) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). "An arresting officer is required to conduct a reasonable investigation to establish probable cause. An officer, however, need not take 'every conceivable step . . . at whatever cost, to eliminate the possibility of convicting an innocent person.'" Rankin, 133 F.3d at 1435–36 (alterations in original) (citations omitted) (quoting Tillman v. Coley, 886 F.2d 317, 321 (1989)). "Importantly, in evaluating probable cause, an officer may not 'unreasonably disregard certain pieces of evidence' by 'choosing to ignore information that has been offered to him or her' or 'electing not to obtain easily discoverable facts' that might tend to exculpate a suspect." Cozzi v. City of Birmingham, 892 F.3d 1288, 1294 (11th Cir. 2018) (alterations adopted) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1229, 1233 (11th Cir. 2004)).

---

right was clearly established.

"Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." <u>Rankin v. Evans</u>, 133 F.3d 1425, 1441 (11th Cir. 1998). However, "officers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1228 (11th Cir. 2004). Although not "every failure by an officer to discover 'easily discoverable facts' violates the Fourth Amendment . . . officers cannot 'conduct an investigation in a <u>biased</u> fashion or <u>elect</u> not to obtain easily discoverable facts.'" <u>Washington v. Rivera</u>, 939 F.3d 1239, 1248 (11th Cir. 2019) (quoting <u>Kingsland</u>, 382 F.3d at 1229). Further, "an officer cannot ignore facts that would give a reasonable officer 'sufficient concerns.'" <u>Id.</u> (quoting <u>Tillman</u>, 886 F.2d at 321).

Officers investigating an alleged battery are not required to find evidence corroborating a physical harm because a battery can be committed without a resulting injury. <u>Huebner</u>, 93 F.3d at 1188. In <u>Huebner</u>, one sister called 911 claiming that the other sister—Huebner—"pulled her by the hair, punched her several times in her left cheek, and scratched her on the left wrist." <u>Id.</u> at 1185. A first officer arrived and took a statement that corroborated the 911 call, and then a second officer relieved him and was told the same story. <u>Id.</u> at 1185–86. The second officer examined the accusing sister for injuries or scratches but did not find any. <u>Id.</u> at 1186. The second officer then went to Huebner's house and

placed Huebner under arrest. Id. Huebner claimed that she had called 911, had cuts on her arm from her sister, and had two witnesses. Id. However, the officer declined to interview the witnesses and handcuffed Huebner. Id. The district court found that the second officer was entitled to qualified immunity on the § 1983 false arrest claim against him because he had probable cause to believe Huebner committed a battery. Id. Huebner appealed, advancing the same two arguments that Savales makes here: (1) the officer did not have reasonably trustworthy information; and (2) the officer did not conduct an adequate investigation. Id. at 1187. The Eleventh Circuit found that relying on the accuser's sworn statement (that had been the same through three iterations— the 911 call, the first officer, and then the second officer) was sufficient even without corroborating physical evidence—"no scratches, red marks, etc."— because physical injury is not an element of Florida battery. Id. Relatedly, the court found that the officer's investigation was sufficient and he was not "required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present[ed] a sufficient basis for believing that an offense ha[d] been committed." Id. at 1188 (quoting Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002)).

Similarly, Savales's false arrest claim fails. Officer Cater arrived at Casa Del Rio for a reported battery. Waters told Cater that Savales had hit her with a two-by-four, Strean confirmed the story, and there was a two-by-four in the

vicinity. (Doc. 16 ¶¶ 30–36). This was enough for probable cause. Nonetheless, Cater attempted to further investigate by asking Savales to step out of her car but she refused. Id. ¶¶ 38–39. Savales's refusal to speak with Cater did nothing to subtract from the probable cause he already had to arrest her.

Savales's other arguments are not well taken. Battery under Florida law does not require an injury, so not looking for one (or even the absence of such injuries) does not negate probable cause. Huebner, 935 F.3d at 1188. Further, although Tillman holds that officers cannot refuse to investigate their own serious doubts, Cater attempted to investigate further by interviewing Savales who refused to comply. See Tillman, 886 F.2d at 321. Lastly, that Cater did not locate a chain is immaterial. Waters reported in the 911 call that Savales hit her with a two-by-four and threatened to choke her with a chain. (Doc. 16 ¶ 26). Because Savales only threatened to choke Waters with a chain, not finding one does not negate probable cause—it could have easily been an empty threat. Thus, by Savales's own allegations, Cater had probable cause to arrest Savales and Counts X, XI, and XV should be dismissed with prejudice.

**B. Malicious Prosecution**

Savales also alleges malicious prosecution against Cater. "Under Florida law, the elements a plaintiff must allege [in a malicious prosecution claim] include . . . an absence of probable cause to initiate the proceeding against him. Accordingly, the existence of probable cause defeats a malicious prosecution

claim." Zargari v. United States, 658 F. App'x 501, 506 (11th Cir. 2016) (citing

Alamo Rent–A–Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994)). Because

Cater had probable cause to arrest Savales, her malicious prosecution claim

against him, Count XIV, fails. See id.

### C. Battery and § 1983 Excessive Force

Savales alleges Florida battery claims against Cater and the City and a

federal § 1983 claim for excessive force against Cater. Cater and the City

contend that the force Cater used during Savales's arrest was appropriate

under the circumstances. (Doc. 23 at 10, 23).

An officer is entitled to qualified immunity for an excessive force claim

where "a reasonable officer would believe that this level of force is necessary in

the situation at hand." Stephens v. DeGiovanni, 852 F.3d 1298, 1321 (11th Cir.

2017) (quotation marks omitted) (quoting Lee v. Ferraro, 284 F.3d 1188, 1197

(11th Cir. 2002)). The Court must "balance the risk of bodily or psychological

harm to the suspect against the gravity of the threat the officer sought to

eliminate." Id. (alteration adopted) (quoting McCullough v. Antolini, 559 F.3d

1201, 1206 (11th Cir. 2009)).

> In an excessive-force claim under Florida law, "police officers are
> entitled to a presumption of good faith in regard to the use of force
> applied during a lawful arrest, and officers are only liable for
> damage where the force used is 'clearly excessive.'" Davis [v.
> Williams, 451 F.3d 759, 768 (11th Cir. 2006)] (quoting City of
> Miami v. Sanders, 672 So. 2d 46, 47 (Fla. 3[d] DCA 1996)). "If an
> officer uses excessive force, the 'ordinarily protected use of force

> . . . is transformed into a battery.' " Id. (quoting Sanders, 672 So.
> 2d at 47).

Id. at 1329 n.35. Thus, the state law battery and federal § 1983 excessive force claims are analyzed under the same standard. See Detris v. Coats, 523 F. App'x 612, 617 (11th Cir. 2013) (holding that because federal excessive force claim could proceed, "parallel state law claim of battery" could also proceed).

Cater was called to the scene to investigate an alleged battery, both Waters and Strean stated that Savales hit Waters with a two-by-four, they identified the two-by-four, and then when Cater went to question Savales she refused to exit her running vehicle and told him to leave. So, Cater was dealing with a situation that required some further action.

However, as pled, Savales posed no threat to herself or anyone else and had only been asked once to step out of her vehicle. (Doc. 16 ¶ 40). Thus, regardless of whether Savales was cooperative, as alleged, it was objectively unreasonable for Cater to forcibly pull an elderly woman from her car, slam her to the pavement, and injure her without informing her she was under arrest or of the consequences of not exiting her vehicle. Id. ¶ 41. While some level of force may have been appropriate if Savales had continued her refusal to comply with Cater's lawful commands, as alleged, Cater asked Savales only once to step out of her vehicle and he did not warn her that she was under arrest or that her failure to comply could result in her being physically removed from her vehicle.

See Florida. v. Royer, 460 U.S. 491, 498 (1983) (holding that citizens who are not detained or seized can ignore law enforcement questions and continue on their way); (Doc. 16 ¶¶ 40–43). Therefore, taking the alleged facts in the light most favorable to Savales, Cater's actions were an "over-reactive, disproportionate action for the situation relative to [Savales's] response . . . ." Stephens, 852 F.3d at 1317.

Turning to the second prong of the qualified immunity analysis, despite no case directly on point, Cater's alleged actions were obviously unreasonable. "In an obvious-clarity case, where the officer's conduct is plainly objectively unreasonable, a court does not need prior case law to determine the force used by the officer was excessive and unlawful, because it was disproportionate." Id. at 1318. In determining an obvious-clarity case, the Eleventh Circuit uses three factors to determine if the force used in making an arrest was objectively reasonable: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Id. (quotation marks omitted) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002)).

Here, the factors demonstrate that Cater's alleged use of force is "plainly objectively unreasonable" because Savales was elderly, posed no immediate threat to the officer or anyone else, was unaware that she was under arrest, was not actively resisting arrest or fleeing, and was asked only once to step out

of her vehicle. See id.; Vinyard, 311 F.3d at 1347–48. Additionally, Savales allegedly suffered a "smash[ed] . . . left foot" and a torn right shoulder. (Doc. 16 ¶ 118). Although the Court considered whether the alleged use of force was de minimus, that Cater allegedly knew Savales was elderly, not threatening, and given no warning about the consequences of her failure to comply, renders the amount of force alleged here unreasonably excessive. See Stephens, 852 F.3d at 1324 n.27 (stating that officers are entitled to use force where a suspect refuses to comply with their instructions, but that officers must still "assess not only the need for force, but also the relationship between the need and the amount of force used."). At the pleading stage, the totality of circumstances render the amount of force used objectively unreasonable such that any reasonable officer would know that the amount of force would violate the Constitution. Id. Thus, based on the allegations in the Third Amended Complaint, Cater and the City's motion is denied as to the battery and excessive force claims.[2] However, Cater can assert qualified immunity at a later stage of the proceeding as appropriate.

---

[2] The City also argues that the state law battery and false imprisonment claims against it should be dismissed because Savales failed to allege with particularity that she complied with the required notice provision in Florida Statute § 768.28(6). (Doc. 23 at 4–5). Savales alleges that she "has performed all conditions precedent prior to bringing this action as to each of the Defendants named herein." (Doc. 16 ¶ 20). Such a general averment is sufficient to satisfy the notice provision in § 768.28(6). See Bustetter v. Armor Corr. Health Servs., Inc., 919 F. Supp. 2d 1282, 1286 (M.D. Fla. 2013) ("Plaintiff responds that he has generally alleged performance of all conditions precedent in paragraph 27 of his amended complaint, and as such, his allegation of

### III. WATERS AND WRH'S MOTION TO DISMISS

Waters moves to dismiss the two claims against her: malicious prosecution (Count I) and civil conspiracy (Count VI). (Doc. 24 at 2). WRH joined Waters motion arguing that because the claims against Waters should be dismissed, WRH cannot be held vicariously liable for Waters's actions. (Doc. 25 at 2).

### A. Malicious Prosecution

Under Florida law, a plaintiff must establish six elements to prevail on her malicious prosecution claim:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994). The absence of any element is fatal to a malicious prosecution claim. Id. Waters argues that Savales has failed to allege a bona fide termination in her favor, the

_____

compliance is sufficient . . . .") (citing Ritter v. City of Jacksonville, No. 3:07-cv-506-J-16HTS, 2007 WL 2298347, at *3 (M.D. Fla. Aug. 7, 2007); Smith v. Rainey, 747 F. Supp. 2d 1327, 1337 (M.D. Fla. 2010)).

absence of probable cause, and that Waters instigated the criminal prosecution. (Doc. 24 at 2).

A "bona fide termination" "means that the first suit, on which the malicious prosecution suit is based, ended in a manner indicating the original defendant's (and current plaintiff's) innocence of the charges or allegations contained in the first suit . . . ." <u>Doss v. Bank of Am., N.A.</u>, 857 So. 2d 991, 994 (Fla. 5th DCA 2003). It is not enough that the termination of the first suit be favorable to the defendant in that suit, the termination must demonstrate the first suit's lack of merit. <u>Id.</u> "[S]uits that terminate because of technical or procedural reasons or considerations other than the merits of the first suit, are not 'bona fide terminations' and will not support a malicious prosecution suit." <u>Id.</u> A good faith declination to prosecute can be a bona fide termination, but only if done as a result of the suit's lack of merit. <u>See</u> <u>Alamo</u>, 632 So. 2d at 1355; <u>Gatto v. Publix Supermarket, Inc.</u>, 387 So. 2d 377, 380–81 (Fla. 3d DCA 1980) ("The underlying reason for a 'nolle prosequi,' even as the underlying reason for a 'declination to prosecute' or a 'no information,' may or may not be related to the merits of the cause being abandoned.").

Regarding the bona fide termination, Savales alleges that "[o]n April 16, 2016, [Savales] was adjudicated mentally incompetent . . . and the State Attorney's Office declined to prosecute the charges . . . based on such adjudication." (Doc. 16 ¶ 49). Under Florida law, "[t]he test used to determine

the defendant's competency is whether the defendant has a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.'" <u>Maxwell v. State</u>, 974 So. 2d 505, 509 (Fla. 5th DCA 2008) (quoting <u>Hill v. State</u>, 473 So. 2d 1253, 1257 (Fla. 1985)). Thus, mental incompetency relates to Savales's ability to appreciate the proceedings and is irrelevant to the merits of such proceedings. Therefore, the State Attorney's Office's declination to prosecute Savales based on her mental incompetency adjudication is not a bona fide termination. Accordingly, the malicious prosecution claims (Counts I through V) shall be dismissed.[3]

## B. Civil Conspiracy

Under Florida law:

A civil conspiracy claim requires: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy.

---

[3] "A district court may on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." <u>Courboin v. Scott</u>, 596 F. App'x 729, 735 (11th Cir. 2014) (citing <u>Loman Dev. Co. v. Daytona Hotel & Motel Suppliers, Inc.</u>, 817 F.2d 1533, 1537 (11th Cir. 1987)). Because Savales relies on the same bona fide termination for each of her malicious prosecution claims, dismissal of those claims against the nonmoving Defendants (Strean and Stare Decisis USA, LLC) is appropriate.

<u>Philip Morris USA, Inc. v. Russo</u>, 175 So. 3d 681, 686 (Fla. 2015). Waters asserts that because Savales's malicious prosecution claim fails, her civil conspiracy also fails because she cannot demonstrate an unlawful act. (Doc. 24 at 9–10). However, Savales argues that the civil conspiracy claim is not dependent upon her malicious prosecution claims because she has sufficiently alleged that Waters and Strean conspired to violate Florida statutes §§ 817.49 & 837.05. (Doc. 34 at 16).

Sections 817.49 and 837.05 make it unlawful for any person to convey false information regarding the commission of a crime to law enforcement. §§ 817.49 & 837.05, Fla. Stat. (2019). Savales alleges that Waters and Strean agreed to falsely report that Savales had assaulted or battered Waters. (Doc. 16 ¶¶ 27–35, 87). Although this appears to be an "unlawful act," there is a split in authority on whether the unlawful act must be a tort and not a crime. <u>Compare</u> <u>Phila. Indem. Ins. Co. v. Hamic</u>, No. 8:12-cv-829-T-26EAJ, 2012 WL 5055558, at *1 (M.D. Fla. Oct. 18, 2012) ("In the civil context of conspiracy, the unlawful act is a tort, not a crime . . . ."), <u>with</u> <u>Bocciolone v. Solowsky</u>, No. 08-20200-CIV, 2009 WL 936667, at *7 (S.D. Fla. Apr. 6, 2009) (finding that plaintiff sufficiently alleged larceny to support its civil conspiracy claim). As this was not the basis for Waters's motion to dismiss, the Court will deny the motion and allow Waters to raise the issue on a full record if appropriate.

**C. Attorneys' Fees**

Lastly, Waters and WRH move to strike Savales's request for attorneys' fees because there is no contractual or statutory basis for such fees. (Doc. 24 at 10). As to the claims for civil conspiracy (the only state law claims remaining), Savales has failed to plead a contractual or statutory basis for attorneys' fees. As the Court is unaware of any contractual or statutory basis for such fees, the demand for attorneys' fees as to the civil conspiracy claims shall be stricken.[4] See, e.g., Resmondo v. N.H. Ins. Co., No. 8:13-CV-2907-T-30EAJ, 2013 WL 6894857, at *1 (M.D. Fla. Dec. 31, 2013); Associated Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc., No. 12-80393-CIV, 2013 WL 1176252, at *3 (S.D. Fla. Mar. 20, 2013).

**IV. RIVERBEND'S MOTION FOR SUMMARY JUDGMENT**

Savales asserts two claims against Casa Del Rio (Riverbend): malicious prosecution (Count III) and civil conspiracy (Count VIII). The Court has already determined that the malicious prosecution claims are due to be dismissed with prejudice. Thus, Riverbend's motion for summary judgment pertains only to the civil conspiracy claim against it. Although Savales failed to respond to the motion for summary judgment despite having an opportunity to do so,[5] the

---

[4] See supra note 4.
[5] See supra Part I.B.

Court cannot simply grant it. "[A] district court 'cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.'" Howard v. Gee, 538 F. App'x 884, 891 (11th Cir. 2013) (quoting United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, 363 F.3d 1099, 1101 (11th Cir. 2004)). "A district court must also 'ensure that the motion itself is supported by evidentiary materials.'" Id. (quoting 5800 SW 74th Ave., 363 F.3d at 1101); see also Fed. R. Civ. P. 56.

Casa Del Rio's motion argues that the undisputed material facts prove that Waters was not Casa Del Rio's apparent agent, and, thus, Casa Del Rio cannot be held liable for Waters's actions. (Doc. 51 at 4). Additionally, Casa Del Rio asserts that Savales admitted in her deposition that she is not seeking damages against Casa Del Rio, which is a required element for her civil conspiracy claim.

Under Florida law, "an apparent agency exists only if each of three elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 121 (Fla. 1995). Although the determination of an agency relationship is normally a question of fact, "when the moving party fails to produce any supportive evidence or when the evidence presented is so

23

unequivocal that reasonable persons could reach but one conclusion, that question of fact becomes a question of law to be determined by the court." Marchisio v. Carrington Mortg. Servs., LLC, 919 F.3d 1288, 1311 (11th Cir. 2019) (quoting Hickman v. Barclay's Int'l Realty, Inc., 5 So. 3d 804, 806 (Fla. 4th DCA 2009)).

The only evidence before the Court is Savales's deposition. In it, Savales confirms that Riverbend never made any representations to her, that she never spoke with anyone from Riverbend, and that Riverbend was not directly involved in the incident leading to this lawsuit. (Doc. 51-1 at 23). With Savales and Riverbend each being given an opportunity to present evidence on the issue, reasonable persons could reach but one conclusion: that Riverbend made no representation to Savales that would have created an apparent agency. See Marchisio, 919 F.3d at 1311. Accordingly, Savales's civil conspiracy claim against Riverbend based on Waters's actions as an apparent agent fails.[6]

Accordingly, it is hereby

**ORDERED:**

1.      Defendants Janene Waters and WRH Realty Services, Inc.'s Motion to Dismiss (Docs. 23, 24) is **GRANTED in part and DENIED in part**:

---

[6] Even if the Court had not already dismissed the malicious prosecution claim against Riverbend, the lack of an apparent agency relationship between Waters and Riverbend would result in judgment in Riverbend's favor on the malicious prosecution claim.

a. Counts I, II, III, IV, and V for malicious prosecution are **DISMISSED with prejudice**.

b. The claims for attorneys' fees under Counts VI, VII, and IX are **STRICKEN**.

c. The motion is **DENIED** as to Counts VI and VII.

2. Defendants William Cater and the City of Jacksonville's Motion to Dismiss (Doc. 23) is **GRANTED in part and DENIED in part**:

a. Counts X (Florida Unlawful Arrest against Cater), XI (Florida Unlawful Arrest against the City), XIV (Florida malicious prosecution against Cater), and XV (42 U.S.C. § 1983 for false arrest against Cater) are **DISMISSED with prejudice**.

b. The motion is **DENIED** as to Counts XII, XIII, and XVI.

3. Defendant Riverbend Partners, LLC's Motion for Summary Judgment is **GRANTED**.

4. Finding no just reason for delay, the Clerk shall enter judgment for Defendant Riverbend Partners, LLC and against Plaintiff Eva Helda Savales for Counts III and VIII.

5. Not later than **March 31, 2020**, Defendants Janene Waters, WRH Realty Services, Inc., William Cater, and the City of Jacksonville shall answer the remaining claims against them: Count VI for civil conspiracy against Waters and Strean, Count VII for civil conspiracy against WRH, Count XII for

battery against Cater, Count XIII for battery against the City, and Count XVI for § 1983 excessive force against Cater.

6.    Not later than **March 20, 2020**, Plaintiff shall file proof of service of process for Stare Decisis USA, LLC. Failure to file the required proof of service will result in dismissal of the remaining claim (Count IX) against Stare Decisis USA, LLC in accordance with Federal Rule of Civil Procedure 4(m), without further notice.

7.    This case continues to be governed by the Case Management Scheduling Order (Doc. 18), as amended (Doc. 37).

**DONE AND ORDERED** in Jacksonville, Florida this 9th day of March, 2020.

TIMOTHY J. CORRIGAN
United States District Judge

jjb
Copies to:

Counsel of record